# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EARNESTINE MATTHEWS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 02487 |
| v. | ) ) | Judge Castillo |
| UNITED RETAIL INCORPORATED, | ) ) | Magistrate Judge Ashman |
| Defendant. | ) ) | |

## UNITED RETAIL INCORPORATED'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Michael O'Neil (ARDC #06201736)
Albert E. Hartmann (ARDC #06256064)
**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
T: 312-368-4000

Filed: November 28, 2007

Defendant United Retail Incorporated. ("United Retail"), by its attorneys, hereby submits its Brief in Opposition to Plaintiff's Motion for Class Certification.

## I. **INTRODUCTION**

On December 15, 2006, Ms. Matthews (a former employee terminated by United Retail in August 2006), used her credit/debit card to make a purchase from a woman's apparel store, AVENUE, operated by United Retail. The receipt provided to Plaintiff displayed only the last five (5) digits of the account number and the expiration date associated with the account. Six months later, Plaintiff filed this putative class action, alleging that United Retail "willfully" violated the Fair Credit Reporting Act, by printing the expiration date on her receipt, and "failed to protect plaintiff and others against identity theft and credit card and debit card fraud."

Plaintiff, however, admits that neither she nor any class member suffered any harm from the display of the expiration date. Plaintiff further admits that the information printed on United Retail's receipts is insufficient to allow identity theft or credit card fraud, and concedes that, at a minimum, any potential identity thief would also need to obtain Plaintiff's credit card bill through "dumpster-diving." Even the conjectural harm arising from this hypothetical serendipitous set of events is conditioned upon Plaintiff's admittedly unsupported belief that knowledge of an expiration date is useful in some way to the dumpster-diving identity thief.

Based upon this cumulative series of contingencies – a United Retail receipt falling into the hands of a criminal, who separately obtains from the customer's garbage the bill for the credit card used at the AVENUE -- and the false belief that the credit/debit account expiration date is necessary to complete the crime, Plaintiff asks this Court to certify a class of customers who received receipts from AVENUE stores in Illinois which displayed expiration dates. Because United Retail changed its receipt-printing practices months before this lawsuit was filed, and because no harm resulted from its earlier practice, Plaintiff prosecutes this action for one reason: to obtain a class-wide statutory damages award ranging from $3.7 million to more than $37 million. Because Plaintiff has failed to identify any benefit derived from class treatment of her claims, and because the entry of any class-wide judgment would violate the due process rights of United Retail and otherwise produce "undesirable results," class treatment is not the superior method of adjudicating Plaintiff's claims, and class certification should be denied.

## II. FACTUAL BACKGROUND

Aside from discovery responses containing an estimate of the class size, Plaintiff relies upon a hodgepodge of materials apparently retrieved from the Internet to establish United Retail's knowledge of the statutory amendment, and the harm purportedly resulting from printing expiration dates on receipts. Plaintiff does not and cannot tie these random documents to United Retail. In fact, Plaintiff's motion and supporting memorandum are simply cookie-cutter pleadings filed in a number of cases pending in the Northern District of Illinois.[1] In contrast are the sworn declaration of United Retail's experts and other materials submitted in opposition to the motion, which provide the factual basis necessary for this Court's informed ruling.

**A. United Retail Was Unaware Of The Expiration Date-Masking Requirement Until Shortly After Its Effective Date.**

Among the many additions and other amendments made to the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), by the Fair and Accurate Credit Transactions Act ("FACTA"), was a provision requiring that certain credit card receipts not display "more than the last 5 digits of the card number or the expiration date," id. §1681c(g). Plaintiff makes the unsupported claim that this change in law was "widely publicized," (Mot., Docket No. 20, ¶7; Mem., Docket No. 21, at 2), and that United Retail "knew or should have known" about the expiration date-masking requirement. (Compl., Docket No. 1, ¶26.) On the eve of the provision's effective date, however, United Retail was not aware of the expiration date-masking requirement. (Def.'s Resp. to Req. for Adm. No. 4 (Ex. 1 to Mot.).) In fact, United Retail did not learn of the requirement until January 2007, when it received an advisory notice from the National Retail Federation concerning the class action lawsuits filed in California. (Def.'s Resp. to Interrog. No. 14 (copy attached as Ex. A).) Although Plaintiff was employed by United Retail (until terminated for failure to abide by company policy in August 2006), she testified that she had no facts suggesting that United Retail knew or should have known of FACTA. (Matthews Dep. 102:9-103:6 (excerpts attached as Ex. B)

---

[1] Counsel has filed the nearly identical motion and supporting memorandum in other similar cases pending in this District. See, e.g., Redmon v. Uncle Julio's of Illinois Inc., 07 CV 2350, Docket Nos. 25-26 (Castillo, J.); Pacer v. Rockenbach Chevrolet Sales, Inc., 07 CV 5173, Docket Nos. 17-18; Harris v. Best Buy Co., 07 CV 259, Docket Nos. 41-42; Heath v. Chernin's Shoe Outlet, LLC, 07 CV 2449, Docket Nos. 28-29; Harris v. The Directv Group, Inc., 07 CV 3650, Docket Nos. 31-32; Harris v. Circuit City Stores, Inc., 07 CV 2512, Docket Nos. 22-23.

**B.    Due To The Provision's Obscurity, And The Lack Of Notice, Retail Industries Were Unaware Of The Expiration Date-Masking Requirement.**

United Retail is not alone in having been a retailer unaware of the new truncation requirements of FACTA until recently.  Since the December 4, 2006, effective date of FACTA's truncation provision, plaintiff's class action lawyers have filed over 300 putative class action lawsuits across the country.  (List of cases attached as Ex. C.)  Indeed, plaintiff's counsel here has filed thirteen other such cases in this District alone.  (List of cases attached as Ex. D.)

This uniform unawareness of the provision, which crossed several retail industries, is likely due in part to its counter-intuitive codification in a credit reporting statute.  As originally enacted, the focus of the FCRA was to regulate "consumer reporting agencies" ("CRA's"), or credit bureaus, and ensure that they adopt reasonable procedures.  15 U.S.C. §1681(b).  While amendments to the FCRA have imposed certain duties on users of credit reports, the statutory focus remained regulating the use of credit history information.  FACTA, passed in 2003, significantly amended the FCRA.  Some of these new duties represented efforts to prevent identity theft which—with one exception—were imposed on entities already regulated under the FCRA.  See generally, Pub.L. 108-159, Title I (FACTA provisions for "Identity Theft Prevention And Credit History Restoration"), 117 Stat. 1954-68 (2003).  The one exception is the truncation provision, which expanded the reach of the FCRA to the retail industry, many members of which had no previous experience with the FCRA.  This truncation provision was not added as a new section of the FCRA.  Rather, it was included in Section 1681c—titled "Requirements relating to information contained in consumer reports"—which regulates the information that a CRA can include in a consumer report.  15 U.S.C. §1681c.

Moreover, while certain public materials contemporaneous with FACTA noted the requirement to truncate account numbers on receipts, none of these materials made similar reference to the expiration date-masking requirement.[2]  Of particular note, the Federal Trade Commission ("FTC"), the agency charged with primary enforcement of the FCRA, released a June 2004 statement describing FACTA's identity theft provisions which only referenced the duty to truncate account numbers, and made no mention of the expiration date-masking requirement.  (Copy attached as Ex. E.)  It was not until May 2007—after the onslaught of class

---

[2]  See, e.g., Prepared Statement Of The Federal Trade Commission On Identity Theft And Social Security Numbers, at 7 (June 15, 2004); Statement By President George W. Bush Upon Signing H.R. 2622 [FACTA] 2004 (attached as Ex. X); U.S.C.C.A.N. 1755, 1757 (2003) (attached as Ex. Y).

action lawsuits against unsuspecting retailers—that the FTC issued an alert which noted the rule regarding expiration dates. (Copy attached as Ex. F.)

**C.    United Retail Began Masking Expiration Dates Months Before This Action Was Filed.**

As soon as it learned of FACTA's expiration date-masking requirement, United Retail immediately reviewed its credit-card printing procedures. (Def.'s Resp. to Interrog., Ex A, No. 14.) United Retail provides receipts for credit/debit transactions using its private-labeled credit card, as well as for general credit cards issued by third parties (e.g., VISA or MasterCard). Both types of receipts truncated the account number, showing only the last five (5) digits of the card number (in compliance with FACTA) although United Retail had done so for years before the enactment of FACTA. Because United Retail's private-label credit cards do not have expiration dates, receipts for purchases using those cards fully complied with FACTA. (Id., Nos. 14-15.) With respect to other credit cards, however, United Retail discovered that the receipts provided to customers did include the expiration date. United Retail began immediate action to change these receipts, and completed an update of its point-of-sale system to remove the expiration date on February 8, 2007. (Id., No. 14.) While Plaintiff received her receipt in December 2006, she did not file the instant action until May 3, 2007, three (3) months after United Retail removed the expiration date from receipts provided to customers. According to its current estimates, United Retail may have provided consumers at its Illinois stores with approximately 37,000 receipts which may have contained an expiration date. (Id., No. 6.)

**D.    The Purported Violation Caused No Harm.**

Plaintiff claims that "Section 1681c(g) is an essential protection against identify theft," (Mot. ¶5), and further claims that "she and the class have been harmed in that defendant has unnecessarily exposed then to identity theft, including credit card fraud." (Pl.'s Resp. to Interrog. No. 2 (copy attached as Ex. G).) However, Plaintiff concedes that she has suffered no such harm almost one year after the alleged violation, and that she has no proof any class member suffered any harm. (Id., Nos. 1-3.) To quantify the increased "risk" alleged by plaintiff, United Retail has retained Dr. Bridget Tenner, a mathematics professor. By her sworn affidavit, Dr. Tenner explains that, armed with the information on a United Retail receipt, a criminal would have, at best, a 1-in-a-billion chance of guessing the actual account number associated with a United Retail receipt. (Tenner Decl. ¶¶7-9, (copy attached as Ex. H).) If, as many merchants require, the criminal was required to provide the three-digit security code printed on the credit card, the

4

odds of making an unauthorized charge on a credit card decrease to either 1-in-a-trillion or 1-in-ten-trillion, depending on the criminal's knowledge of an obscure algorithm which is used by the credit card industry. (Id., ¶¶11-13.)

Plaintiff even admits that the truncated account number and expiration date on United Retail receipts are insufficient to allow identity theft or credit card fraud. (Pl.'s Resp. to Interrog., Ex. G, No. 11.) Recognizing the non-utility of a partial account number and expiration date, Plaintiff claims that the risk of credit card fraud posed by a United Retail receipt exists <u>only if the criminal, through "dumpster-diving," also obtains a credit card bill which contains the full account number</u>. Plaintiff's theory of harm is further contingent upon the unsupported premise that an exact match for the expiration date is required for "card-not-present transactions." (Id., No. 12.)[3] United Retail, in contrast, provides the sworn expert testimony of Joel Lisker, formerly the Senior Vice-President for Security and Risk Management at MasterCard International, that disclosure of the expiration date on United Retail receipts does not expose consumers to an increased risk of harm. (Lisker Decl. ¶¶7-10 (copy attached as Ex. I).) Thus, under Plaintiff's "dumpster diving" scenario, it is the information obtained elsewhere, not any of the information on a United Retail receipt, which creates the risk of harm described by Plaintiff.[4]

## III.   ARGUMENT

### A.   This Court Should Conduct A Rigorous Analysis Of Law And Facts In Considering Class Certification.

The decision whether to certify a class "rests in the discretion of the district court." <u>J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.</u>, 628 F.2d 994, 998 (7th Cir. 1980). The party seeking class certification has the burden of demonstrating that certification is appropriate, and the failure to meet any one of the requirements of Rule 23 precludes certification of a class. <u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7 F.3d 584, 596 (7th Cir. 1993).

In determining whether the moving party has met this burden, the district court must make the factual and legal inquiries necessary to ensure that the requirements are satisfied. <u>Szabo v. Bridgeport Machs., Inc.</u>, 249 F. 3d 672, 676 (7th Cir. 2001). In so doing, the court does not accept the movant's factual allegations as true; instead, the court resolves factual issues

---

[3]  It is worth noting that neither of the articles relied upon by Plaintiff (Ex. 2-3 to Mot.) even mention expiration dates as a tool for facilitating identity theft.

relating to class certification, as it would do on a Rule 12(b)(1) motion to dismiss on jurisdictional grounds. Szabo, 249 F.3d at 675-77; Gilmore v. Southwestern Bell Mobile Sys., 210 F.R.D. 212, 217 (N. D. Ill. 2001). In resolving factual issues related to class certification, the District Court must subject them to a "rigorous analysis." Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003) (quoting Gen. Tel. Co. of the S. W. v. Falcon, 457 U.S. 147, 160-61 (1982)). The Seventh Circuit has further held that a "rigorous analysis" of the facts is necessary to prevent any injury to defendant and any prospective class members. "Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations." Szabo, 249 F.3d at 677.

The Seventh Circuit has noted the need to actively assess the case upon a Rule 23 motion:

> [A]n order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23.

Szabo, 249 F.3d at 675-76.

**B. The Entry Of A Multi-Million Dollar Class Judgment For Unintended, Technical Violations Of FCRA That Cause No Harm Is Not The Superior Method Of Adjudication.**

Notably, because Plaintiff seeks certification pursuant to Rule 23(b)(3), even where the specifically-enumerated requirements of Rule 23 are met, this Court can decline to certify a class if it is not the "superior" method for the "fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); see also In re Trans Union Privacy Corp. Litig., 211 F.R.D. 328, 349 (N.D. Ill. 2002) ("the fact that a class action is not prohibited does not mean that it is the superior method to resolve the dispute"). As the Advisory Committee noted, the superiority requirement allows the court to exercise its considerable discretion to deny class certification where the adverse consequences outweigh any perceived benefits:

> In the situations to which this subdivision ((b)(3)) relates, class-action treatment is not as clearly called for as in those described above, (i.e. (b)(1) and (b)(2)), but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve

---

[4] As Mr. Lisker notes, even in the remote circumstances where a consumer's account is used for fraudulent transactions, the merchant or the card issuer, not the consumer, incurs the financial loss associated with the fraudulent transactions. (Id. ¶¶ 10-16.)

> economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, <u>without sacrificing procedural fairness or bringing about other undesirable results</u>.

Fed. R. Civ. P. 23(b)(3) (advisory committee's notes) (emphasis added). Here, because certification could lead to a class judgment in excess of $37 million for an unintended violation that caused no harm, it is not the superior method of adjudicating the controversy.

      1.    <u>Murray v. GMAC and other "firm offer" decisions are distinguishable.</u>

      Plaintiff is incorrect that <u>Murray v. GMAC Mortgage Corp</u>, 434 F.3d 948 (7th Cir. 2006) (hereinafter "<u>GMAC</u>"), and this Court's rulings in other "firm offer" cases, including <u>Murray v. New Cingular Wireless Servs., Inc.</u>, 232 F.R.D. 295 (N.D. Ill. 2005) (hereinafter "<u>New Cingular</u>"), mandate class certification here.

      First, unlike in these decisions, neither Plaintiff nor any putative class member has suffered any harm here. Plaintiff claims that the violation of law increased the risk of "identity theft, including credit card fraud," but she admits to no evidence of such harm. (Pl.'s Resp. to Interrog., Ex. G, Nos. 1-3). As demonstrated by the sworn affidavits of United Retail's credit card security and statistics experts (Exs. H, I), there is no risk of identity theft (or even credit card fraud) by the disclosure of the expiration date. Compare the disclosure of this information with the use and disclosure of consumer credit report information in <u>GMAC</u> and <u>New Cingular</u>, and other "firm offer" cases. The Seventh Circuit in <u>GMAC</u> noted that certification under Rule 23(b)(3) is appropriate where "injury is substantial in the aggregate," 434 F.3d at 953, but did not comment on the circumstance here, where injury in the aggregate is nil.

      Second, the potentially violative conduct here is not a conscious decision to risk a statutory violation for a business purpose, as in <u>GMAC</u> and other "firm offer" cases, but the continuation of a previous practice that accrued no financial benefit to United Retail. The <u>GMAC</u> court was unsympathetic to defendant's due process argument because the defendant there faced potential substantial statutory damages due to "GMAC's <u>decision</u> to obtain the credit scores of more than a million persons." 434 F.3d at 953 (emphasis added); <u>see also</u> <u>H & R Block Mortgage Corp. Prescreening Litig.</u>, 244 F.R.D. 490, 496 (N.D. Ind. 2007) (distinguishing printing expiration date after change in law because "decision to send these prescreened solicitations to large numbers of consumers was a <u>conscious decision rather than a mere technical violation</u>.") (emphasis added). The situation here, identical to that distinguished in <u>H&R Block</u>, does not involve an affirmative business decision aimed at economic gain, but

rather an unawareness of the law (shared with the entire retail industry) leading to a mere "technical violation" (as several courts have described it, see infra Part D) which caused no harm to consumers and accrued no economic benefit to United Retail.

Third, unlike in GMAC and other cases cited by plaintiff, she need not prove intentional misconduct by United Retail, but only "reckless disregard." Therefore, the due process and fundamental fairness analysis is changed in light of the intervening Supreme Court decision in Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201 (2007). When GMAC was decided, the Seventh Circuit had interpreted the FCRA to require intentional conduct in order to award statutory damages under Section 1681n. See Wantz v. Experian Info. Sys., 386 F.3d 829, 834 (7th Cir. 2004). In Safeco, the Supreme Court earlier this year rejected the Seventh Circuit's position, and instead adopted the Ninth Circuit's lower liability threshold, holding that evidence of reckless conduct is sufficient to meet the "willful" requirement. 127 S.Ct. at 2208-09. Thus, the GMAC court's analysis of the "superiority" requirement in Rule 23(b)(3) was based on a higher threshold for liability that no longer exists.

In more than a dozen decisions, other federal courts have declined to certify an FCRA statutory damages class of consumers receiving credit card receipts violative of §1681c(g). See infra. Part D. Most notable of these cases for the pending motion is one decision which reconciled denial of class certification with the "wise" decision in GMAC. Judge Cormac J. Carney, sitting in the Central District of California, has considered motions to certify classes under both §1681c(g) and the FCRA's "firm offer" provision. Notably here, in a firm offer class action, Phillips v. Accredited Home Lenders Holding Co., 06-CV-0057 slip op. (C.D. Cal. May 15, 2007) (copy attached as Ex. J), Judge Carney quoted from and adopted the Seventh Circuit's holding in GMAC in certifying a class there. Id. at 12-13.

Just months later, in Serna v. Big A Drug Stores, Inc., 07- CV-0276 slip op. (C.D. Cal. Oct. 9, 2007) (copy attached as Ex. K), that same court was asked to certify a class of people receiving credit card receipts violative of §1681c(g). As plaintiff does here, the plaintiff in Serna asked Judge Carney to follow GMAC. Id. at 7. Judge Carney, although reaffirming agreement with the Seventh Circuit's approach, distinguished GMAC because at issue in Serna was an unintentional, "technical violation" that resulted in no harm to the class, while the firm offer cases represent substantive violations of the FCRA through affirmative action by the defendant:

> [GMAC], however, presented a factual scenario distinct from the case at bar. In [GMAC], the mortgage company committed a substantive violation of consumers' rights by gaining access to credit reports for an illegal end. The Seventh Circuit wisely decided to hold the mortgage company accountable for each and every affirmative violation of the FCRA. But here, Big A has committed only a technical violation of FACTA. By failing to truncate customer account numbers and expiration dates, Big A sought no pecuniary gain for itself, nor affirmatively violated the statute. Given the purely technical violation of FACTA, Big A's due process argument is particularly powerful, especially in light of the lack of harm to Ms. Serna or any other individual.

Id. at 7-8 (citations omitted).

At least one district court in the Seventh Circuit has also agreed that the circumstantial differences between "firm offer" cases and "credit card receipt" cases make GMAC inapplicable in the latter cases. In considering motions for class certification in a multidistrict proceeding, the H & R Block court distinguished two decisions denying class certification in §1681c(g) cases. "In contrast to [a FCRA 'firm offer' action], a FACTA violation is a mere technical violation." 244 F.R.D. 495-96.

    2.    Remittitur is not the superior method of adjudication.

As noted by the Seventh Circuit in GMAC, and foreshadowed by this Court in New Cingular, a court may conclude that remittitur of an unconstitutionally large class FCRA statutory damages award is "a more palatable option" than (or "superior" to) letting a defendant which committed "substantive violations of the law" to go unpunished. 232 F.R.D. at 304. However, a class certification ruling premised on possible remittitur is not the superior method of adjudication here for two reasons.

First, relevant here, and not addressed in GMAC, is the fundamental principle that courts should interpret statutes to avoid constitutional issues. See, e.g., Clark v. Martinez, 543 U.S. 371, 380-81 (2005). This mandate "reflects the prudential concern that that constitutional issues not be needlessly confronted." Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Counsel, 485 U.S. 568, 575 (1988). As in GMAC, any decision to certify here presumably would be premised upon the ability of the Court to reduce after trial a class-wide judgment potentially totaling more than $37 million. However, unnecessarily compelling a judicial finding that the FCRA's remedial scheme, at least as applied here, is unconstitutional is the type of "undesirable result" that the superiority requirement of Rule 23(b)(3) was intended to avoid. Because any violation here was unintentional and resulted in no harm, and was remedied

months before this lawsuit was filed, remittitur is not a "palatable option." New Cingular, 232 F.R.D. at 304; see also id. at 304-05 (noting that decertification of class may prove necessary, because modifying the damage award is not always "a viable solution").

Second, the possible reduction of damages in the event of the inevitable disproportionate class judgment also fails to reduce the "in terrorem effect on defendants, which may induce unfair settlements," of a certified statutory damages class. See New Cingular, 232 F.R.D. at 304 (quoting Parker v. Time Warner Entm't Co., 331 F.3d 13, 22 (2nd Cir. 2003)). The Seventh Circuit has spoken consistently and repeatedly as to the risk created by class certification that the defendant would be compelled to agree to a "blackmail settlement." See e.g., In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1298 (7th Cir. 1995).[5] Class certification would create an untenable pressure on United Retail to enter into a "blackmail settlement" in this case, and the possibility of remittitur does not ameliorate this risk. Notably, Judge Carney in Serna recognized that, although the remittitur option made sense in GMAC, it does not reduce the risk of a blackmail settlement "for a non-injurious technical violation" of §1681c(g). Ex. K, slip op. at 8.

3.  Where FCRA violation causes no injury, gross disparity of the class award to the resulting harm requires denial of class certification.

The Seventh Circuit has never addressed the issue of whether class certification would violate the superiority requirement of Fed. R. Civ. P. 23(b)(3) where, as here, the plaintiff does not allege that she or any of the purported class members suffered any actual damages and even a minimum class-wide statutory damages award would be enormous.[6]

In Trans Union, certification was denied based on the enormity of the potential statutory damages and the complete absence of actual harm that the conduct at issue could have caused. 211 F.R.D. at 350-51. Notably, the Trans Union court distinguished Seventh Circuit precedent certifying a class on the same basis that GMAC is distinguishable here. Although the Seventh Circuit in Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161 (7th Cir. 1974), found certification of a statutory damages class in a TILA action appropriate, the Trans Union court noted that "the most important factor in Haynes was the allegation of actual damages." 211

---

[5]  See also In re: Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig., 288 F.3d 1012, 1016 (7th Cir. 2002) (class certification made "the stakes so large, that settlement becomes almost inevitable — and at a price that reflects the risk of a catastrophic judgment as much as, if not more than, the actual merit of the claims"); West v. Prudential Secs., Inc., 282 F.3d 935, 937 (7th Cir. 2002) (noting "[t]he effect of a class certification in inducing settlement to curtail the risk of large awards").

F.R.D. at 350.  See also Haynes, 503 F.2d at 1165 ("we deem it highly significant that here, unlike Ratner and Wilcox, actual damages were alleged").  Consistent with GMAC, the Trans Union court noted:

> Although certification should not be denied solely because of the possible
> financial impact it would have on a defendant, consideration of the financial
> impact is proper when based on the disproportionality of a damage award that has
> little relation to the harm actually suffered by the class, and on the due process
> concerns attended upon such an impact.

Trans Union, 211 F.R.D. at 351; see also infra Part D (citing cases declining to certify Section 1681c(g) claims as class claims).

At least one other ruling from the Northern District of Illinois has similarly distinguished the ruling to certify a class in Haynes.  See Sampson v. Western Sierra Acceptance Corp., 204 WL 406992 at *2 (N.D. Ill. 2004), rev'd in part on reconsideration after partial settlement by, Sampson v. Ridge Chrysler, 2004 WL 725471 (N.D Ill. 2004) (granting partial class certification only as to an out-of-business defendant to whom insurance coverage was available).  The court there declined to certify an FCRA statutory damages class due to the disparity between harm and award in part because "[u]nlike the plaintiffs in Haynes, the Plaintiff here has not alleged any actual damages."  Id.; see also Anderson v. Capitol One Bank, 224 F.R.D. 444, 452-53 (W.D. Wisc. 2004) (refusing to certify FCRA statutory damages class where "[i]t is hard to imagine that anyone could have incurred actual damages of any significance").

This Court should decline to certify a Rule 23(b)(3) class in this case for the same reasons: no allegation of actual harm (and no proof of increased risk of harm) and the specter of a multi-million dollar statutory damages class award.  By United Retail's estimate, the proposed class may have received approximately 37,000 receipts which displayed the expiration date.  The potential statutory damages in this case are thus between $3.7 million and $37 million.  See 15 U.S.C. §1681n(a)(1)(A).  By contrast, Plaintiff admits that she has suffered no injury, and has no evidence that any class member has suffered such harm.  Moreover, according to United Retail's card security expert, Joel Lisker, and its statistics expert, Dr. Bridget Tenner, it would be *impossible* for the mere disclosure of an expiration date and the last five (5) digits of a card number to permit identity theft (or even credit card fraud) so no actual injury can occur.  The utter disproportion between $37 million in potential statutory damages and no actual injury

---

[6] Of course, this Court need not determine here that proof of harm is a necessary element in establishing liability

presents a compelling basis for denying certification. See also infra Part D (decisions denying certification of claims brought under 15 U.S.C. §1681c(g)).

**C. Because Class Treatment Provides No Benefit, Court Shall Decline To Certify Class.**

This Court certified an FCRA statutory damages class in New Cingular in part because it served "the twin aims of the class action procedural device, i.e., (1) 'to compensate victimized members of groups who are similarly situated,' and (2) 'to deter violations of the laws.'" 232 F.R.D. at 305 (citation omitted). However, certification here would serve neither Rule 23 purpose. Moreover, given the remedies available in individual actions under the FCRA, individuals are incentivized to individually prosecute violations where appropriate. Therefore, class treatment is not the superior method for adjudicating the claim.[7]

1. There is no need to aggregate claims to compensate the class.

As noted above, Plaintiff concedes that she has not suffered any harm as a result of the presence of the expiration date on the credit card receipt she received, and she has no evidence that any class member has been harmed. (See Pl's Resp. to Interrog., Ex. G, Nos. 1-3). United Retail's experts confirm that no harm will occur. Therefore, the primary need for Rule 23(b)(3) certification, i.e., to provide recovery where "injury is substantial in the aggregate," GMAC, 434 F.3d at 953, is not present here.

2. No need to incentivize individual lawsuits.

Relatedly, because of the FCRA remedial scheme, denial of class certification will not disincentivize the bringing of individual actions. The FCRA provides that a consumer may recover a minimum of $100 and up to $1,000 for each willful violation, punitive damages and costs and attorneys' fees. 15 U.S.C. §1681n(a); see also 15 U.S.C. §1681o(a)(2) (actual damages and attorneys' fees and costs recoverable for a negligent violation). Considered as a whole, these are strong incentives for individual consumers to protect their rights. See Gardner v. Equifax Info. Servs., LLC, No. 06-3102, 2007 WL 2261688 at *6 (D. Minn. Aug. 6, 2007) (availability

---

under Section 1681c(g), only that the absence of harm is relevant to the superiority analysis under Rule 23(b)(3).

[7] In contrast, class certification will have negative consequences. The risk of a "blackmail settlement" is discussed supra Part B.2. Another real negative consequence of class certification is attorney abuse of the process. Several courts denying certification in FACTA cases have found that a class action is not the superior method for resolving the dispute because certification would open the door to attorney abuse of the class action process. See infra Part D; GMAC, 434 F.2d at 952 ("the class device has been used to obtain leverage for one person's benefit"). Given that plaintiff's counsel was actively soliciting consumers to file class action cases involving credit card receipts (copy of e-mail solicitation attached as Ex. L), and plaintiff's admission she was unconcerned for the theoretical harm posed by a receipt until she learned of counsel's inquiry (Matthews Dep., Ex. B, 104:23-107:1), this case is a classic example of attorney-generated litigation which this Court should not encourage.

of fees and costs under FCRA was sufficient incentive for bringing individual suits).[8]  Thus, denial of certification will not prevent United Retail's customers from proceeding with individual cases.

       3.      No need to compel compliance or serve deterrence goal.

Class certification here also will serve no deterrence goal.  The purpose of consumer protection statutes, such as the FCRA and the Truth in Lending Act, is to ensure compliance, not to punish unwary violators.  Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1377 (11th Cir. 1984).  As this Court has recognized, one of the objectives of class action litigation is to deter future violations.  New Cingular, 232 F.R.D. at 305; Gammon v. GC Servs., Ltd. P'ship, 162 F.R.D. 313, 321 (N.D. Ill. 1995); see also GMAC, 434 F.3d at 953 ("society may gain from the deterrent effect" of class litigation).  Here, United Retail complied with the new requirement months before Plaintiff filed suit, and any earlier noncompliance was the result of inadvertent failure to learn of a change in federal law, and not some measured economic decision to test the edges of the law.  Furthermore, United Retail has no incentive to cease its compliance, given that there is no potential benefit.  Therefore, class certification will not serve any deterrence goal.

**D.**    **Numerous Federal Courts Have Declined To Certify FCRA Statutory Damages Classes In Cases Alleging Violation Of FACTA's Credit Card Receipt Provision.**

Other federal district courts, in more than a dozen written rulings, have denied certification of a class seeking statutory damages of $100 - $1,000 for each violation of Section 1681c(g) by defendants whose conduct is virtually identical to United Retail's, recognizing that class treatment is not the superior method for the fair and efficient adjudication of the controversy, as required by Rule 23(b)(3).[9]  As briefly noted below, these courts rejected class treatment on many of the same grounds urged here.

---

[8]  See also Hyderi v. Washington Mut. Bank.  235 F.R.D. 390, 399 (N.D. Ill. 2006) ("Precedent teaches that the availability of statutory damages plus the ability to recover attorneys fees and costs provides substantial incentives to bring meritorious individual suits.") (citing Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir. 1996)); Castano v. Am. Tobacco Co., 84 F.3d 734, 748 (5th Cir. 1996)); Hamilton v. O'Connor Chevrolet, Inc., 2006 U.S. Dist. LEXIS 44149, at *41 (N.D. Ill. 2006) (same).

[9]  United Retail is aware of two orders issued in §1681g(c) credit card receipt cases which grant class certification.  Reynoso v. S. County Concepts, Inc., 07-CV-0373 (C.D. Cal Oct. 15, 2007); Medrano v. WCG Holdings, Inc., 07-CV-0506 (C.D. Cal Oct. 15, 2007).  United Retail is aware of only one decision from the Northern District of Illinois on a Rule 23 motion in a case alleging violation of §1681c(g).  On August 27, 2007, Judge St. Eve denied plaintiff's motion for class certification without a written opinion.  Rhodes v. A & M National, Inc., 07 CV 3690, Docket N0. 16 (N.D. Ill.).

For example, in Spikings v. Cost Plus, Inc., 06-CV-8125 slip op. (C.D. Cal. May 25, 2007) (copy attached as Ex. M), the court conducted a thorough analysis and concluded that certifying a class was not superior because it would create undesirable results.  The court noted that "it appears unlikely, if not impossible, for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any other actual harm."  Id. at 5; see also Soulian v. Int'l Coffee and Tea LLC, 07- CV-502 slip op. at 3-4 (C.D. Cal. June 11, 2007), appeal of denial of class certification allowed, 07-80100 (9th Cir. Sept. 13, 2007) (copy attached as Ex. N) (finding harm from disclosure of an expiration date "virtually impossible"); Najarian v. Avis Rent A Car Sys. LLC, 07- CV-588 slip op. at 5 (C.D. Cal. June II, 2007) (copy attached as Ex. O) ("expert analysis shows that it is impossible for there to be any injury").  Plaintiff's own admissions, and the sworn declaration of United Retail's experts, compel a similar finding here.[10]

The Spikings court further recognized that the defendant's prompt remedial action shortly after service of the complaint supported denial of class certification.  Ex. M, slip op. at 5; see also Lopez v. KB Toys Retail, Inc., 07- CV-144 slip op. at 6 (C.D. Cal. July 17, 2007) (copy attached as Ex. P) ("Defendant's immediate action to comply with FACTA's requirements once becoming aware of Plaintiff's Compliant also supports denial of class certification."); Soualian, Ex. N, slip op. at 4 ("By immediately remedying their misconduct upon receiving Plaintiff's Complaint, Defendants demonstrated good faith and nullified any deterrence benefit that might have been derived from a class action.")  Certification is even less warranted here, where United Retail came into compliance months before this action was even filed.

The Spikings court further found that denial of class certification would not deprive any aggrieved party from bringing an action against the defendant, and would prevent the potential of abuse by class action attorneys:

> Finally, as other courts have found, a class action would not be the superior method for the fair and efficient adjudication of the controversy in a case such as this one because it could possibly open the potential for abuse by attorneys in such a class action. . . . While the Court does not express an opinion on the propriety of the conduct of Plaintiff's counsel in this case, the Court agrees that

---

[10]  The opinion of United Retail's credit card security expert has been adopted by at least two district courts.  Avis, Ex. O, slip op. at 5; Medrano v. ModernParking, Inc., 07- CV-2949 slip op. at 6 (C.D. Cal. Sept. 17, 2007) (copy attached as Ex. Q).  Moreover, a bill recently introduced in the U.S. House of Representatives  to address "abusive lawsuits" brought under Section 1681c(g) specifically finds that "experts in the field agree that proper truncation of the card number, by itself as required by the amendments made by FACTA, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." H.R. 4008, 100th Cong. (2007).

14

such a potential for abuse is an additional reason why maintenance of a class
action is not superior to individual actions under FACTA in cases such as this one
where there is an enormous contrast between the huge liability suffered by
Defendant and the lack of harm suffered by Plaintiff.

Spikings, Ex. M, slip op. at 5-6; see also Lopez, Ex. P, slip op. at 6-7 ("the plain truth is that in many cases Rule 23(b)(3) is being used as a device for the solicitation of litigation. This is clearly an 'undesirable result' which cannot be tolerated") (quoting Buford v. Am. Fin. Co., 333 F. Supp. 1243, 1251 (N.D. Ga. 1971)).

Many other district courts, when considering facts similar to those here, have also denied class certification of Section 1681c(g) claims. Najarian v. Charlotte Russe, Inc., 07- CV-501 slip op. at 5-6 (C.D. Cal. June 12, 2007) (copy attached as Ex. R) (noting "lack of actual harm" from disclosure of an expiration date); Evans v. U-Haul of Cal., Inc., 07- CV-2097 slip op. at 5-6 (C.D. Cal. Aug. 14, 2007) (copy attached as Ex. S) (harm from disclosure of an expiration date "unlikely, if not impossible"); ModernParking, Ex. Q, slip op. at 5-6 (harm from disclosure of an expiration date "unlikely, if not impossible"); Vasquez-Torres v. McGrath's Publick Fish House, Inc., 07- CV-1332 slip op. at 9-10 (C.D. Cal. Oct. 12, 2007) (copy attached as Ex. T) (no allegation of actual harm from disclosure of expiration date). See also Papazian v. Burberry Ltd., 07- CV-1479 slip op. at 1 (C.D. Cal. Aug. 3, 2007) (copy attached as Ex. U) (finding that the superiority requirement was not met); Bateman v. American Multi Cinemas Inc., 07- CV-0171 slip op. at 1 (C.D. Cal. Oct. 31, 2007) (copy attached as Ex. V) (citing to 11 other class certification denials in credit card receipt cases and finding that the superiority requirement was not met); Moon v. FedEx Kinko's Office and Print Servs., Inc., C-06-07657 slip op. at 1-2 (N.D. Cal. Oct. 15, 2007) (copy attached as Ex. W) (same).

WHEREFORE, and for all the foregoing reasons, defendant United Retail Incorporated respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

Filed:  November 28, 2007

Respectfully submitted,
**UNITED RETAIL INCORPORATED**

By:     /s/Michael O'Neil
One of Its Attorneys

Michael O'Neil (ARDC #06201736)
Albert E. Hartmann (ARDC #06256064)
**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
312-368-4000

15

## <u>CERTIFICATE OF SERVICE</u>

I, Michael O'Neil, an attorney, depose and state that on November 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve electronic notice on the following:

Keith James Keogh
Alexander Holmes Burke
Law Offices of Keith J. Keogh
227 West Monroe Street #2000
Chicago, IL 60606
Email: Keith@Keoghlaw.com
Email: aburke@keoghlaw.com

/s/ Michael O'Neil_____
Michael O'Neil